CASE 44.—ACTION BY LILLIAN E. GREENE AGAINST THE
MIDDLESBOROUGH TOWN AND LANDS CO. TO RECOVER
DIVIDENDS ON STOCK ISSUED BY THE INVESTMENT
CO. OF MIDDLESBOROUGH.—October 31.

## Greene v. Middlesborough Town & Lands Co.

Appeal from Bell Circuit Court.

M. J. Moss, Circuit Judge.

1. Corporations—Contracts—Guaranty—A provision of articles of
incorporation authorizing the corporation to make contracts,
acquire, and transfer property, "possessing the same powers
in such respects as private individuals now enjoy," is limited
by another provision of the articles, defining the business of
the corporation as the purchase and sale of lands, location
of town sites, the platting and construction of streets and
alleys, and the construction and maintenance of waterworks,
lighting plants, and street railways, and does not authorize
the corporation to enter into a contract guarantying the stock
of another corporation.
2. Same—Articles of corporation organized to buy and sell lands,
purchase, locate, and plat town sites, construct streets,
bridges, etc., and build and maintain waterworks, light plants,
and street railways which authorized the corporation to
take and hold stock in any corporation which will promote its
own interests or those of a city in which it is interested,
and to assist any person or corporation proposing to locate
and conduct business in such city by donating lands to such
person or corporation, do not authorize the corporation to
guaranty the stock of a corporation conducive to the interests
of, or engaged in business in, the city in question.
3. Same—Ultra Vires Contracts—Receipt of Consideration—Ef-
fect—While a corporation which, acting in excess of its
powers, guaranties for a valuable consideration the stock of
another corporation, must surrender the consideration which
it has unlawfully obtained, yet the fact that it has received
such consideration does not affect the illegal character of the
guaranty, nor the availability of the defense of ultra vires.

WM. LOW and ISAAC T. WOODSON for appellant.

Appellant's brief on the last trial not being in the record, the following is inserted from their petition for rehearing (Reporter):

It seems to counsel that an opinion which misconceives material facts of the case and the spirit of the decisions on which the opinion is based, so that the law is applied in favor of a party pleading "ultra vires" and thereby asserting its own guilt of moral turpitude, as against the rights of an innocent third party acting in good faith, should be withdrawn.

"The defense of ultra vires by a corporation comes with a better grace before it has discovered that it has made a bad bargain. The law never sustains a defense of this nature out of regard for a defendant." (Wright v. Pipe Line Co., 101 Pa. St., 207.)

"The executed dealings of corporations must be allowed to stand for and against both parties when the plainest rules of good faith so require." (Parrish v. Wheeler, 22 New York, 508.)

"Circumstances may, and often do, exist which estop the offender, of taking advantage of his own wrong. The contract may be entered into on the other side without any participation in the guilt, and without any knowledge even of the vice that contaminates it. An innocent person may part with value, or otherwise change his situation upon the faith of the contract." (Bissell v. Michigan, &c., R. Co., 22 N. Y., 273.)

"The amount of benefit, or of trouble, or of detriment, or its comparative value, in relation to the promise, is of no importance." (Am. & Eng. Ency. of Law, vol. 14, 1133.)

"The plaintiff's rights could not be affected by a subsequent rescission." (Opdyke v. Pac. R. Co., 3 Dill., 73.)

"Corporations are liable for the acts of their servants while engaged in their employment in the same manner and to the same extent that individuals are liable under like circumstances. Estoppel in pais presupposes an error or a fault, and applies an act in itself invalid. The rule proceeds upon the consideration that the author of the misfortune shall not himself escape the consequences and cast the burden upon another."

"After a great deal of litigation, the rule has become established that such a guaranty is valid, provided it is based on a valuable consideration, and the consideration is such as the guarantor has power to receive or invest in." (Cook on Stock and Stockholders, vol. 2, sec. 775.)

"Corporations are liable for every wrong of which they are guilty, and in such cases the doctrine of ultra vires has no application." (Merchants' Bank v. State Bank, 10 Wallace, 645.)

"The most frequent application of this doctrine is that where a

corporation has entered into a contract which has been fully exe-
cuted by the other contracting parties, so that nothing remains
for the corporation to do but to pay the consideration money, it
will not be allowed to set up that the contract was ultra vires."
(Ency. of Law and Procedure, vol. 10, p. 1163.)

"If the contract can be valid under any circumstances, an in-
nocent party in such a case has a right to presume their existence,
and the corporation is estopped to deny them." (Louisville,
&c., Ry. Co. v. Louisville Trust Co., 174 U. S., 573.)

"But whatever under the charter and other general laws, rea-
sonably construed, may fairly be regarded as incidental to the
object for which the organization was created, is not taken to be
prohibited." (Rhorer v. M. T. & L. Co., 104 Ky., 148.)

"If the corporation itself seeks to avoid its contract on the
ground that it was ultra vires, this presumption puts upon it
the burden of showing that its articles of incorporation did not
authorize the contract." (Ency. of Law and Procedure, vol. 10,
1156.)

The power to make the guaranty, on the facts stated in the
original petition, is res adjudicata by the former appeal herein,
unless the fact appears affirmatively that the company had not
either express or implied power to make the guaranty; and the
discretion given to subscribe for stock in any corporation which,
in the judgment of the company, would promote its interests or
the interests of the town of Middlesborough, gave the implied
power to take the stock and pay for it by the guaranty method.

Allegations stricken from the petition in the lower court, be-
fore the former appeal, form no part of the present record, though
copied in the transcript. (Rhorer, Receiver v. M. T. & L. Co.,
104 Ky., 148; Louisville, &c., Ry. Co. v. Louisville Trust Co., 174
U. S., 573-4; Merchants Bank v. State Bank, 10 Wallace [U.
S.], 645; Cook on Stock and Stockholders, vol. 2, 775; Ency. of
Law and Procedure, vol. 10, chap. 1108; Ky. Citizens Building &
Loan Association v. Laurence, 20 Ky. Law Rep., 1700; Ky. Live
Stock Breeders' Association v. Miller, 27 Ky. Law Rep., 39; Cur-
rent Law, vol. 3, p. 917; Humboldt Min. Co. v. Am. Mfg., Min. &
Milling Co., 62 Fed. Rep., 356; Greenbay and M. R. Co. v. Union
Steamboat Co., 107 U. S., 100; Marbury v. Ky. Union Land Co.,
63 Fed. Rep., 345; Fort Worth City Co. v. Bridge Co., 14 Sup.
St., 339; Watts Appeal, 40 Cal., 83; Opdyke v. Pac. R. R., 3 Dill.,
73; Todd v. Ky. Union Land Co., 57 Fed. Rep., 53; Chicago, R. I.
& P. Ry. Co. v. U. P. R. R. Co., 47 Fed Rep.; Morawetz on Cor-
porations, sec. 362; Parish v. Wheeler, 22 N. Y., 508; Bissell v.
Michigan, &c., R. R. Co., 22 N. Y., 273; Alleghany v. McCluski,
14 Penn., 83; Lestapies v. Ingraham, 5 Barr., 81; Wright v. Pipe
Line Co., 101 Pa. [St.], 207-208; Ency. of Law and Procedure,

Greene v. Middlesborough Town and Lands Co.

vol. 10, 1155-6-1163; G. F. Wittmer Lumber Co. v. Rice, 23 Ind. App., 586; Am. & Eng. Ency. of Law, vol. 14, 1133; Watson, Ex'or v. McLaren, 19 Wend., 563.)

J. R. SAMPSON and W. E. CABELL for appellee.

PROPOSITIONS DISCUSSED AND AUTHORITIES.

1. The contract sued on is ultra vires and void, not being an act within the express or implied powers enumerated in the articles of incorporation. (Green v. Middlesborough Town and Lands Co., 22 Ky. Law Rep., 1715; Gen. Stats., chap. 56, sec. 2; Rhorer v. Middlesborough Town and Lands Co., 19 Ky. Law Rep., 1789; Marble v. Harvey, 92 Tenn., 115; Marbury v. Union Land Co., 62 Fed. Rep., 335; Green Bay & M. R. Co. v. Union Steamboat Co., 107 U. S. Sup. Ct., 100; National Salt Co. v. Ingram, 122 Fed. Rep., 41; Davis v. Old Colony R. R., 131 Mas., 258; Lucas v. White Line Transfer Co., 70 Iowa, 542; Ohio College of Dentistry v. Rosenthal, 45 Ohio St., 183; Elevator Co. v. Memphis & C. R. R. Co., 85 Tenn., 704; Pittsburg & C. R. Co. v. Alleghany Co., 63 Pa. St., 126; Hood v. N. Y. & N. H. R. R., 22 Conn., 1; Todd v. Ky. Union Land Co., 57 Fed. Rep., 48; Frankfort Bridge Co. v. Frankfort, 18 B. M., 46; M. V. Monarch Co. v. Farmers & Traders Bank, 20 Ky. Law Rep., 1351; Ky. Citizens Building & R. Co. v. Lawrence, 20 Ky. Law Rep., 1700; Jessamine County v. Swykart, 8 Ky. Law Rep., 682; Louisville N. A. R. R. v. Louisville Trust Co., 174 U. S. Sup. Ct., 575; Green's Brice's Ultra Vires, 28 and 29.)

2. A specific designation of a manner in which a power granted is to be exercised excludes the authority to exercise the power in any other manner..

a. One dealing with a corporation must take notice of its charter powers and limitation. (Thompson v. West Jersey R. R., 101 U. S. Sup. Ct., 71; Lucas v. White Line Transfer Co., 70 Iowa, 542; Maddox & Co. v. Graham & Knox, 2 Met., 72; First National Bank of Covington v. Keefer Milling Co., 15 Ky. Law Rep., 460; Morawetz on Private Corporations, vol. 2, secs. 591-2, and many of the authorities above.

3. A guarantee of dividends, regardless of whether earned or not, is void. (Thompson on Corporations, vol. 2, secs. 2236-2237; Green's Brice's Ultra Vires, 173 and 252, and many of the authorities above.)

OPINION BY JUDGE BARKER—Affirming.

This case is here for the second time. The opinion

on the first appeal is to be found in 61 S. W., 288, 22 Ky. Law Rep., 1715, from which we borrow the following statement:

"Appellant instituted this action to recover of appellee, Middlesborough Town & Lands Co., the sum of $420, alleged to be due her as dividends on certain shares of stock issued by the Investment Co. of Middlesborough, which dividends were guaranteed for 10 years at 7 per cent. by the Middlesborough Town Co. It is alleged that, in consideration of 200 shares of stock in the Investment Co. the Town Co., a corporation duly organized and created, with power to sue and be sued, to contract and be contracted with, by a writing on the back of the stock issued by the Investment Co.—the Middlesborough Town Co.— guaranteed the payment of dividends for a fixed period. The written guaranty is as follows: 'For value received, the Middlesborough Town Co. guaranties to the holder hereof payment of a dividend at the rate of 7 per cent. per annum, payable semi-annually on the 1st day of January and July, at the Coal & Iron Bank of Middlesborough, Kentucky, for a period of ten years from the first day of July, 1891.' "

Upon the first trial in the circuit court a general demurrer to the petition was sustained, and, the appellant declining to plead further, her petition was dismissed. Upon the appeal from that judgment to this court it was reversed, in an opinion holding that the petition stated a cause of action; and in replying to the contention of the corporation that the pleading contained no allegation sufficient to warrant the inference that the Middlesborough Town Co. was authorized by its charter to make the guaranty sued on it was held that the plea of ultra vires was a defense, and must be presented by proper pleading.

Upon the return of the case, ultra vires was pleaded as to the guaranty in question, and upon a trial of the issue so made the articles of incorporation and amendments were read in evidence, and a judgment was rendered by the trial court that the Middlesborough Town Co. was without authority to make the guaranty sued on, and again dismissing the petition, from which judgment the appellant has again appealed.

In order to simplify matters, we say now that we concur with the circuit judge in his conclusion that the Middlesborough Town & Lands Co. and the Middlesborough Town Land Co. are merely reorganizations of the Middlesborough Town Co., and they are each responsible for any debt owed by the Middlesborough Town Co. This reduces the issue involved here to the question, was the Middlesborough Town Co. authorized by its charter and its amendments to guaranty the stock of the Investment Co. of Middlesborough?

The Middlesborough Town Co. was organized under chapter 56 of the Gen. Stats., and so much of the articles of incorporation as is pertinent hereto is as follows: "To have perpetual succession, to sue and be sued by the corporate name, to have a common seal and alter the same at pleasure, to render the shares of interest of stockholders transferable and to prescribe the mode of making such transfers, to exempt the private property of members from liability, for corporate debts, to make contracts, acquire and transfer property, possessing the same powers in such respects as private individuals now enjoy, to establish by-laws and make all rules and regulations deemed expedient for the management of our affairs not inconsistent with the Constitution or laws of this State or the United States. It is further especially,

Greene v. Middlesborough Town and Lands Co.

agreed as follows: (1) The name of the corporation hereby formed is Middlesborough Town Co., and its principal place of business shall be in Louisville, Kentucky. (2) The business of said corporation shall be to buy and sell and deal in lands of all kinds, to purchase, survey, plat and locate town sites within or without the State of Kentucky, and to lay off the same in lots, parks, streets, alleys or public ways, to construct streets, alleys, bridges, parks, culverts or sewers, and maintain the same, to advertise, buy, sell or deal in town lots, to construct and maintain waterways, gasworks, electric light plant and apparatus, and street railways."

By an amendment made in 1890 this power was added: "(3) That this corporation is empowered to take and hold stock in any corporation which in its judgment will promote the interests of this corporation or of the town of Middlesborough."

And by an amendment of 1891 the following power was added: "(6) This company shall have power to take and hold stock in any corporation which, in the judgment of the board of directors, will promote the interests of this company or of the city of Middlesborough. It may promote and assist any person or corporation proposing to locate and conduct business in the city of Middlesborough, by donating lands to such person or corporation."

The foregoing provisions constitute the authority of the corporation to do business, and it is clear that there is nothing expressed or implied of authority to guarantee the stock of another corporation. Counsel for appellant lay great stress upon the language in the original articles of incorporation, that the corporation "shall have power to make contracts, acquire and transfer property, possessing the same powers in such respects as private individuals now

enjoy;" and it is insisted that, as individuals pos-
sess the power to make contracts of guaranty, this
language authorizes the corporation to do the same.
The error of this reasoning lies in that it overlooks
the fact that the articles of incorporation must be
construed as a whole, and the expression "to make
contracts" is to be considered with, and is limited by,
that part of the articles which defines the business
the corporation may do. In other words, the power
to make contracts is conferred with reference to the
business authorized to be done. It is clear that the
stockholders of the corporation did not believe it had
the power to make any contract which an individual
could make; for in 1890 we find them amending the
articles by conferring the power to acquire "and to
hold stock in any corporation which in its judgment
will promote the interests of this corporation or of
the town of Middlesborough." And again, in 1891,
by another amendment conferring the power to "pro-
mote and assist any person or corporation proposing
to locate and conduct business in the city of Middles-
borough by donating lands to such persons or cor-
porations." Nowhere is there conferred the power
to guaranty stock of another corporation, either ex-
press or implied. The powers added by the two
amendments clearly did not confer that of guaranty.
Indeed, the conferring of these express powers by
the amendments shows that the stockholders did not
believe the corporation had all the powers of contract
possessed by individuals. If so, why give any spe-
cific powers? An individual may do anything he
pleases with his own—make any sort of legal con-
tract. Now, if the corporation possessed all the pow-
ers of contract possessed by individuals, it would
have been entirely useless to especially authorize it
to donate land or buy stock in another corporation.

An incidental or implied power is one which is necessary to the enjoyment or exercise of an express power; and it is too plain to require argument that the right to guaranty all of the stock of another corporation is not implied in the right to take and hold stock in it, or to promote its interest by donating lands to it.

Nor do we think that it alters matters that, as a consideration for the guaranty of the stock of the Investment Co. of Middlesborough, the Middlesborough Town Co. received $20,000 par value of its stock. If the act to be done was ultra vires, the consideration in no wise changed the quality of the act. It is true that, if the guarantying company received a valuable consideration for the ultra vires act, it would have to surrender what it had thus unlawfully obtained; but this record shows by the undenied allegations of appellant's petition that the Investment Co.'s stock was never of any value, and the evidence shows that these worthless shares have long since been returned to the corporation which issued them, so that as a matter of fact the Middlesborough Town Co. has never received, and is not now retaining, anything of value belonging to the Investment Co. of Middlesborough.

In Humboldt Min. Co. v. American Manufacturing, Mining & Milling Co., et. al., 62 Fed., 356, 10 C. C. A., 415, United States Circuit Court of Appeals for the Sixth Circuit, speaking through Judge Taft, said: "The general rule in this country and in England is that one corporation is impliedly prohibited from guarantying the contract or debt of another. (Authorities omitted.) The objection to the guaranty is that it risks the funds of the company in a different enterprise and business, under the control of another and different person or corporation, contrary

to what its stockholders, its creditors, and the State
have the right from its charter to expect.     * * * It
is said, however, that the contract has been per-
formed on behalf of the plaintiff, and therefore that
the defendant is estopped to deny its power to make
it.   We do not think that any such principle has ap-
plication here.   Strictly speaking, a corporation is
never estopped to deny its power to make a contract
where the extent of its powers and of the facts rele-
vant thereto were or should have been known to the
parties seeking to enforce the contract when it was
entered into.   In cases where property has been re-
ceived or money paid to the corporation seeking to
avoid the obligation of an ultra vires contract, the
person delivering the property or paying the money
has the remedy of recovering back that which was
given to the corporation on the faith of the ultra
vires contract.   This, however, as has been said
several times by the Supreme Court of the United
States, is not a recovery on the contract, but is, in
effect, an avoiding of the contract, and a restoration
of the parties to the status quo ante.''

In the case of Louisville Railway Co. v. Louisville
Trust Co., 174 U. S., 567, 19 Sup. Ct., 823, 45 L. Ed.,
1081, the rule is thus laid down: ''A railroad cor-
poration, unless authorized by its act of incorpora-
tion or by other statutes to do so, has no power to
guarantee the bonds of another corporation; and
such a guaranty, or any contract to give one, if not
authorized by statute, is beyond the scope of powers
of the corporation, and strictly ultra vires unlawful
and void, and incapable of being made good by ratifi-
cation or estoppel.''

In the case of Kentucky Citizens Building & Loan
Association v. Lawrence, 106 Ky., 88, 20 Ky. Law
Rep., 1700, 49 S. W., 1059, where it was sought by

the stockholders of the Kentucky Building & Loan Association to hold the Kentucky Citizens Building & Loan Association responsible as practically a guarantor for their claim against the first-named corporation, this court, speaking through Judge Hobson, said: "However this may be, appellant, without statutory authority, could not assume the debts or obligations of another corporation. This question was fully considered by this court in the case of Rhorer, Receiver v. Middlesborough Town & Lands Co., 103 Ky., 146, 44 S. W., 448, 19 Ky. Law Rep., 1788. Under the principles settled in that case the contract alleged by appellees was not binding on appellant beyond the amount of the assets received. If appellant had such authority, it must be pleaded, and the petition without this averment was fatally defective."

In Rhorer, Receiver v. Middlesborough Town & Lands Co., above cited, on the subject under consideration we laid down the rule as follows: "Usually one corporation can not acquire or guaranty stock in another corporation, because the State which conferred the franchise, as well as the stockholders who invested their capital in the enterprise and the creditors who advanced their money on the faith of it, have the right to rely on the company's not engaging its funds or risking its property in any business which is not expressly or impliedly permitted by its charter."

The rule is that corporations must have authority to guarantee the obligations of other corporations or persons. This grows out of the general principle that the State confers in the charter all the authority it desires the corporation to possess. The charter thus constitutes a guide to those who may desire to purchase the stock of the corporation; for by examination they can be advised as to its limitations and pow-

ers, and thus obtain a foundation for a rational judgment as to the hazard involved in the investment. If, as in the case at bar, the corporation holds out to a proposed purchaser of stock the contract of another corporation, which is beyond the power of that other corporation to make, this fact by an examination of the charter of that corporation can readily be discovered, and the danger growing out of it avoided. Presumably stockholders intend to invest their directors only with the powers conferred in the charter, and they are chosen with reference to their fitness to discharge the business for which the corporation was organized. It is obvious that, if a directory may hazard the whole corporate property by guarantying the obligations of another corporation without authority so to do, no one could invest money in corporate stock without hazarding its loss by the action of men whom he had no voice in choosing and no power to restrain.

For these reasons the judgment is affirmed.

Petition for rehearing by appellant overruled.